MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
ANTOLIN GALVEZ PRUDENTE,
*individually and on behalf of others similarly
situated,*

*Plaintiff*,

-against-

PROSPERITY 89 INC. (D/B/A THAIS NEW
YORK), LUCKY CHARM 6365 CORP.
(D/B/A THAIS NEW YORK), ADIDSUDA
CHUNTON, GIFT RAKOWSKI, and BIPEN
DOE,

*Defendants.*

-------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER
29 U.S.C. § 216(b)**

**ECF Case**

Plaintiff Antolin Galvez Prudente ("Plaintiff Galvez" or "Mr. Galvez"), individually and on behalf of others similarly situated, by and through his attorneys, Michael Faillace & Associates, P.C., upon his knowledge and belief, and as against Prosperity 89 Inc. (d/b/a Thais New York), Lucky Charm 6365 Corp. (d/b/a Thais New York), ("Defendant Corporations"), Adidsuda Chunton, Gift Rakowski, and Bipen Doe ("Individual Defendants"), (collectively, "Defendants"), alleges as follows:

**NATURE OF ACTION**

1.      Plaintiff Galvez is a former employee of Defendants Prosperity 89 Inc. (d/b/a Thais New York), Lucky Charm 6365 Corp. (d/b/a Thais New York), Adidsuda Chunton, Gift Rakowski, and Bipen Doe.

2.      Defendants own, operate, or control a Thai restaurant, located at 1750 2nd Ave, New York, NY 10128 (formerly located at 1718 Second Avenue, New York, New York 10128) under the name "Thais New York."

3.      Upon information and belief, individual Defendants Adidsuda Chunton, Gift Rakowski, and Bipen Doe serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the restaurant as a joint or unified enterprise.

4.      Plaintiff Galvez was employed as a delivery worker at the Thai restaurant located at 1750 2nd Ave, New York, NY 10128 (formerly located at 1718 Second Avenue, New York, New York 10128).

5.      Plaintiff Galvez was ostensibly employed as a delivery worker. However, he was required to spend a considerable part of his work day performing non-tipped duties, including but not limited to cleaning the kitchen, changing oils, cleaning the fryer,  cutting lemons, cutting cheeses, cutting gingers, taking out the garbage, cleaning the basement, unloading the deliveries, stocking sodas, cleaning the pavement and folding card boxes (hereafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiff Galvez worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that he worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiff Galvez appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Further, at all relevant times, Defendants failed to pay Plaintiff Galvez the required "spread of hours" pay for any day in which he had to work over 10 hours a day.

9.      Furthermore, Defendants repeatedly failed to pay Plaintiff Galvez wages on a timely basis.

10.     Defendants employed and accounted for Plaintiff Galvez as a delivery worker in their payroll, but in actuality his duties required a significant amount of time spent performing the non-tipped duties alleged above.

11.     Regardless, at all relevant times, Defendants paid Plaintiff Galvez the lowered tip-credited rate.

12.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiff Galvez's non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

13.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiff Galvez's actual duties in payroll records by designating him as a delivery worker instead of as a non-tipped employee. This allowed Defendants to avoid paying Plaintiff Galvez at the minimum wage rate and enabled them to pay him at the tip-credit rate.

14.     Defendants' conduct extended beyond Plaintiff Galvez to all other similarly situated employees.

15.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff Galvez and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

16.     Plaintiff Galvez now brings this action on behalf of himself, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et*

*seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

17.    Plaintiff Galvez seeks certification of this action as a collective action on behalf of himself, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiff Galvez's state law claims under 28 U.S.C. § 1367(a).

19.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a Thai restaurant located in this district. Further, Plaintiff Galvez was employed by Defendants in this district.

## PARTIES

### *Plaintiff*

20.    Plaintiff Antolin Galvez Prudente ("Plaintiff Galvez " or "Mr. Galvez  ") is an adult individual residing in New York County, New York.

21.    Plaintiff Galvez was employed by Defendants at Thais New York from approximately August 2016 until on or about July 10, 2018.

22.     Plaintiff Galvez consents to being a party plaintiff pursuant to 29 U.S.C. § 216(b), and brings these claims based upon the allegations herein as a representative party of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

*Defendants*

23.     At all relevant times, Defendants owned, operated, or controlled a Thai restaurant, located at 1750 2nd Ave, New York, NY 10128 (formerly located at 1718 Second Avenue, New York, New York 10128) under the name "Thais New York."

24.     Upon information and belief, Prosperity 89 Inc. (d/b/a Thais New York) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1750 2nd Ave, New York, NY 10128 (formerly at 1718 2nd Ave, New York, NY 10128).

25.     Upon information and belief, Lucky Charm 6365 Corp. (d/b/a Thais New York) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1750 2nd Ave, New York, NY 10128.

26.     Defendant Adidsuda Chunton is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Adidsuda Chunton is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Adidsuda Chunton possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiff Galvez, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

27.    Defendant Gift Rakowski is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Gift Rakowski is sued individually in her capacity as owner, officer and/or agent of Defendant Corporations. Defendant Gift Rakowski possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. She determines the wages and compensation of the employees of Defendants, including Plaintiff Galvez, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

28.    Defendant Bipen Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Bipen Doe is sued individually in his capacity as a manager of Defendant Corporations. Defendant Bipen Doe possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiff, establishes the schedules of the employees, and maintains employee records.

## **FACTUAL ALLEGATIONS**

### *Defendants Constitute Joint Employers*

29.    Defendants operate a Thai restaurant located in the Upper East Side of Manhattan.

30.    Individual Defendants Adidsuda Chunton, Gift Rakowski, and Bipen Doe possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, and/or control significant functions of Defendant Corporations.

31.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

32.    Each Defendant possessed substantial control over Plaintiff Galvez's (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff Galvez, and all similarly situated individuals, referred to herein.

33.    Defendants jointly employed Plaintiff Galvez (and all similarly situated employees) and are Plaintiff Galvez's (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

34.    In the alternative, Defendants constitute a single employer of Plaintiff Galvez  and/or similarly situated individuals.

35.    Upon information and belief, Individual Defendants Adidsuda Chunton and Gift Rakowski operate Defendant Corporations as either alter egos of  themselves and/or failed to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

a)   failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

b)   defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)   transferring assets and debts freely as between all Defendants,

d)   operating Defendant Corporations for their own benefit as the sole or majority shareholders,

e)   operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

f)   intermingling assets and debts of their own with Defendant Corporations,

g)   diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

h)   Other actions evincing a failure to adhere to the corporate form.

36.    At all relevant times, Defendants were Plaintiff Galvez's employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiff Galvez, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiff Galvez's services.

37.    In each year from 2016 to 2018, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

38.    In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiff*

39.    Plaintiff Galvez is a former employee of Defendants who ostensibly was employed as a delivery worker. However, he spent over 20% of each shift performing the non-tipped duties described above.

40.    Plaintiff Galvez seeks to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Antolin Galvez Prudente*

41.    Plaintiff Galvez was employed by Defendants from approximately August 2016 until on or about July 10, 2018.

42.    Defendants ostensibly employed Plaintiff Galvez as a delivery worker.

43.    However, Plaintiff Galvez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

44.    Although Plaintiff Galvez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

45.    Plaintiff Galvez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

46.    Plaintiff Galvez's work duties required neither discretion nor independent judgment.

47.    From approximately August 2016 until on or about December 2016, Plaintiff Galvez worked from approximately 5:00 p.m. until on or about 11:00 p.m., three days a week and from approximately 5:00 p.m. until on or about 11:30 p.m., two days a week (typically 30 to 31 hours per week).

48.    From approximately January 2017 until on or about July 10, 2018, Plaintiff Galvez worked from approximately 12:00 p.m. until on or about 11:00 p.m., three days a week and from approximately 12:00 p.m. until on or about 11:20 p.m., two days a week (with a daily two hour break) (typically 45.66 hours per week).

49.    Throughout his employment, Defendants paid Plaintiff Galvez his wages by business checks and company checks. However, if his paycheck bounced, he was paid in cash.

50.    From approximately August 2016 until on or about December 2016, Defendants paid Plaintiff Galvez $7.50 per hour.

51.    From approximately January 2017 until on or about April 2017, Defendants paid Plaintiff Galvez a fixed salary of $428 per week.

52.     From approximately April 2017 until on or about December 2017, Defendants paid Plaintiff Galvez a fixed salary of $507 per week.

53.     From approximately January 2018 until on or about July 10, 2018, Defendants paid Plaintiff Galvez  $10.85 per hour for his regular hours and $16.28 per hour for some of his overtime hours.

54.     Plaintiff Galvez was not paid for his last week of work.

55.     Plaintiff Galvez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

56.     For example, Defendants regularly required Plaintiff Galvez to work an additional 20 or 30 minutes past his scheduled departure time, and did not pay him for the additional time he worked.

57.     Plaintiff Galvez was never notified by Defendants that his tips were being included as an offset for wages.

58.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Galvez's wages.

59.     Although Plaintiff Galvez was required to keep track of his time, Defendants' time cards did not accurately represent the correct amount of hours that he worked.

60.     More specifically, Plaintiff Galvez's meal breaks were often interrupted, yet defendants still deducted either a half hour or one hour per shift from his daily work hours.

61.     In addition, in order to get paid, Plaintiff Galvez was required to sign a document in which Defendants misrepresented the hours that he worked per week.

62.     Defendants took improper and illegal deductions from Plaintiff Galvez's wages.

63.     Specifically, Plaintiff Galvez's meal breaks were often interrupted, yet defendants still deducted either a half hour or one hour of pay per shift from his wages.

64.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Galvez   regarding overtime and wages under the FLSA and NYLL.

65.     Defendants did not provide Plaintiff Galvez an accurate statement of wages, as required by NYLL 195(3).

66.     In fact, Defendants adjusted Plaintiff Galvez's paystubs so that they reflected inaccurate wages and hours worked.

67.     Defendants did not give any notice to Plaintiff Galvez, in English and in Spanish (Plaintiff Galvez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

68.     Defendants required Plaintiff Galvez to purchase "tools of the trade" with his own funds—including electric bicycles, vests, helmets and bike maintenance.

*Defendants' General Employment Practices*

69.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff Galvez (and all similarly situated employees) to work in excess of 40 hours a week without paying him appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

70.     Plaintiff Galvez was a victim of Defendants' common policy and practices which violate his rights under the FLSA and New York Labor Law by, *inter alia*, not paying him the wages he was owed for the hours he worked.

71.     Defendants' pay practices resulted in Plaintiff Galvez not receiving payment for all his hours worked, and resulted in Plaintiff Galvez's effective rate of pay falling below the required minimum wage rate.

72.     Defendants habitually required Plaintiff Galvez to work additional hours beyond his regular shifts but did not provide him with any additional compensation.

73.     Defendants required Plaintiff Galvez and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

74.     Plaintiff Galvez and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

75.     Plaintiff Galvez's duties were not incidental to his occupation as a tipped worker, but instead constituted entirely unrelated general restaurant work duties, including the non-tipped duties described above.

76.     Plaintiff Galvez and all other tipped workers were paid the lowered tip-credit rate by Defendants.

77.     However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and Plaintiff Galvez's non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

78.     New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

79.    In violation of federal and state law as codified above, Defendants classified Plaintiff Galvez and other tipped workers as tipped employees, and paid them the lowered tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

80.    Defendants failed to inform Plaintiff Galvez who received tips that Defendants intended to take a deduction against Plaintiff Galvez's earned wages for tip income, as required by the NYLL before any deduction may be taken.

81.    Defendants failed to inform Plaintiff Galvez who received tips, that his tips were being credited towards the payment of the minimum wage.

82.    Defendants failed to maintain a record of tips earned by Plaintiff Galvez  who worked as a delivery worker for the tips he received.

83.    Defendants' time keeping system did not reflect the actual hours that Plaintiff Galvez worked.

84.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

85.    Defendants required Plaintiff Galvez to sign a document that reflected inaccurate or false hours worked.

86.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

87.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiff Galvez (and similarly situated individuals) worked, and to avoid paying Plaintiff Galvez properly for his full hours worked.

88.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

89.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiff Galvez and other similarly situated former workers.

90.    Defendants failed to provide Plaintiff Galvez and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

91.    Defendants failed to provide Plaintiff Galvez and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

92.     Plaintiff Galvez brings his FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

93.     At all relevant times, Plaintiff Galvez and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

94.     The claims of Plaintiff Galvez stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

95.     Plaintiff Galvez repeats and realleges all paragraphs above as though fully set forth herein.

96.     At all times relevant to this action, Defendants were Plaintiff Galvez's employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiff Galvez  (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

97.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

98.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

99.     Defendants failed to pay Plaintiff Galvez (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

100.    Defendants' failure to pay Plaintiff Galvez (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

101.    Plaintiff Galvez (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

102.    Plaintiff Galvez repeats and realleges all paragraphs above as though fully set forth herein.

103.    Defendants' failure to pay Plaintiff Galvez  (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

104.    Plaintiff Galvez   (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

105.     Plaintiff Galvez   repeats and realleges all paragraphs above as though fully set forth herein.

106.    At all times relevant to this action, Defendants were Plaintiff Galvez's employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiff Galvez, controlled the terms and conditions of his employment, and determined the rates and methods of any compensation in exchange for his employment.

107.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiff Galvez less than the minimum wage.

108.    Defendants' failure to pay Plaintiff Galvez the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

109.    Plaintiff Galvez was damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

110.     Plaintiff Galvez repeats and realleges all paragraphs above as though fully set forth herein.

111.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiff Galvez overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

112.    Defendants' failure to pay Plaintiff Galvez overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

113.    Plaintiff Galvez was damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

**OF THE NEW YORK COMMISSIONER OF LABOR**

114.    Plaintiff Galvez  repeats and realleges all paragraphs above as though fully set forth herein.

115.    Defendants failed to pay Plaintiff Galvez one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiff Galvez's spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

116.    Defendants' failure to pay Plaintiff Galvez an additional hour's pay for each day Plaintiff Galvez's spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

117.    Plaintiff Galvez was damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

118.    Plaintiff Galvez repeats and realleges all paragraphs above as though fully set forth herein.

119.    Defendants failed to provide Plaintiff Galvez with a written notice, in English and in Spanish (Plaintiff Galvez's primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

120.    Defendants are liable to Plaintiff Galvez in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

121.    Plaintiff Galvez  repeats and realleges all paragraphs above as though fully set forth herein.

122.    With each payment of wages, Defendants failed to provide Plaintiff Galvez with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

123.    Defendants are liable to Plaintiff Galvez in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

124.    Plaintiff Galvez repeats and realleges all paragraphs above as though fully set forth herein.

125.    Defendants required Plaintiff Galvez to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform his

job, further reducing his wages in violation of the FLSA and NYLL. 29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

126.    Plaintiff Galvez was damaged in an amount to be determined at trial.


## NINTH CAUSE OF ACTION

### VIOLATION OF THE TIMELY PAYMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

127.    Plaintiff Galvez repeats and realleges all paragraphs above as though set forth fully herein.

128.    Defendants did not pay Plaintiff Galvez on a regular weekly basis, in violation of NYLL §191.

129.    Defendants are liable to Plaintiff Galvez in an amount to be determined at trial.


## TENTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION

### OF THE NEW YORK LABOR LAW

130.    Plaintiff Galvez  repeats and realleges all paragraphs above as though set forth fully herein.

131.    At all relevant times, Defendants were Plaintiff Galvez's employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

132.    Defendants made unlawful deductions from Plaintiff Galvez's wages.

133.    Specifically, Plaintiff Galvez's meal breaks were often interrupted, yet defendants still deducted either a half hour or one hour of pay per shift from his wages.

134.    The deductions made from Plaintiff Galvez's wages were not authorized or required by law.

135.    Through their knowing and intentional efforts to take unauthorized deductions from Plaintiff Galvez's wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

136.    Plaintiff Galvez was damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Galvez respectfully requests that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff Galvez and the FLSA Class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff Galvez   and the FLSA Class members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiff Galvez's and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)      Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiff Galvez and the FLSA Class members;

(f)      Awarding Plaintiff Galvez and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)      Awarding Plaintiff Galvez and the FLSA Class members liquidated damages in an amount equal to 100% of his damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)      Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff Galvez;

(i)      Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff Galvez;

(j)      Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiff Galvez;

(k)      Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiff Galvez;

(l)      Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiff Galvez's compensation, hours, wages and any deductions or credits taken against wages;

(m)      Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiff Galvez  ;

(n)      Awarding Plaintiff Galvez  damages for the amount of unpaid minimum wage and

overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)     Awarding Plaintiff Galvez damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)     Awarding Plaintiff Galvez liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)     Awarding Plaintiff Galvez and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(r)      Awarding Plaintiff Galvez and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(s)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

   Plaintiff Galvez   demands a trial by jury on all issues triable by a jury.

Dated: New York, New York

   July 27, 2018

                               MICHAEL FAILLACE & ASSOCIATES, P.C.

                         By:        /s/ Michael Faillace
                               Michael Faillace [MF-8436]

60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiff*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 23, 2018

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                      Antolin Galvez Prudente

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                       23 de Julio 2018

*Certified as a minority-owned business in the State of New York*